**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER DEMAREE** | § | |
| | § | |
| **v.** | § | **A-20-CV-443-RP** |
| | § | |
| **ORIENTAL MEDICINE CLINIC, LLC,** | § | |
| **and SACHIKO TACHIBANA** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court is Defendants' Second Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. No. 13), and Plaintiff's Response (Dkt. No. 14). The District Court referred the motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Court Rules.

## I.  BACKGROUND

Christopher Demaree brings this suit against Oriental Medicine Clinic, LLC ("OMC") and Sachiko Tachibana alleging violations of the Fair Labor Standards Act, contending that Defendants failed to pay him overtime wages. Tachibana is the owner and manager of OMC, which runs Sole Foot Spa. Demaree worked at Sole Foot Spa providing front desk services, such as answering phones, booking appointments, and taking payments from customers. Defendants argue that because OMC does not sell products and only offers massage services, it is not engaged in "commerce" and thus is not covered by the FLSA.  Tachibana separately argues that Demaree has not stated sufficient facts to demonstrate that she is an "employer" subject to suit individually under the FLSA.  Demaree contends his First Amended Complaint adequately plead facts supporting the interstate commerce component of his FLSA claim, and showing Tachibana is an employer.

## II.  ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008).  To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B.    FLSA Coverage

The FLSA mandates minimum wage and overtime compensation for employees who are: (1) "engaged in commerce or in the production of goods for commerce" (individual coverage); or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a); *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).  "Either individual or enterprise coverage is enough to invoke FLSA protection." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). Successfully pleading individual or enterprise coverage

under the FLSA is not a high bar. Indeed, the interstate commerce requirement "is rarely difficult to establish." *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 99 (2d Cir. 2009). The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof," or, in simpler terms, interstate commerce. 29 U.S.C. § 203(b).   Demaree alleges both that OMC's business falls under the enterprise coverage provision and that he himself falls under the individual coverage provision.

Demaree relies on the following portions of his Amended Complaint to support the "enterprise coverage" and "individual coverage" elements of his FLSA claim:

15. At all times hereinafter mentioned, Defendants have been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendants are an enterprise and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated). In fact, as a front desk employee/receptionist, Demaree was in a position to observe and did in fact observe Defendants' sales, and personally observed that Defendants had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

17. At all times hereinafter mentioned, Demaree was an individual "employee" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207 and whom Defendants at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g). More specifically, in the course of his duties as a front desk employee/receptionist, Demaree, on a regular basis of at least once per week, would receive phone calls from individuals outside the state of Texas either inquiring about Defendants' services, inquiring about purchasing gift cards, or actually purchasing gift cards over the phone.

18. As a front desk employee/receptionist, Demaree, as well as other employees who also assumed front desk duties in Demaree's absence, handled items such as telephones, computers and credit card terminals as well as other equipment that has been moved in or produced for commerce as defined by 29 U.S.C. §203(b). Use of the above listed items was essential to fulfill the job duties of anyone acting as a front desk employee/receptionist, as the job could not be performed without these items.

Dkt. No. 11.

### 1.    Individual Coverage

For an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by: (1) working for an instrumentality of interstate commerce, e.g., an employer in the transportation or communication industry; or (2) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel. 29 C.F.R. § 776.23(d)(2) & § 776.24. Sufficiently pleading individual coverage requires a plaintiff to "allege facts giving rise to a reasonable inference that he or she was engaged in commerce or in the production of goods for commerce." *Mejia v. Bros. Petroleum, LLC*, 2015 WL 3619894, at *5 (E.D. La. June 9, 2015). "Work that is purely local in nature does not meet the FLSA's requirements, but '[a]ny regular contact with [interstate] commerce, no matter how small, will result in coverage.'" *Williams v. Henegan,* 595 F.3d 610, 621 (5th Cir. 2010) (citing *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)). As noted, Demaree pleads that at least once a week he would receive phone calls from individuals outside the state of Texas inquiring about OMC's services, about purchasing gift cards, or actually purchasing gift cards, and that he regularly used telephones, computers and credit card terminals as well as other equipment that has moved in commerce.

In similar cases involving receptionists and front desk employees, courts in this district have found that use of telephones to speak with out of state customers and processing credit card

4

transactions from these customers, qualified as engaging in commerce sufficient to establish individual coverage under the FLSA for the purposes of dismissal. *See Poole v. Dhiru Hosp., LLC*, 2019 WL 3845454, at *5 (W.D. Tex. Aug. 15, 2019); *Esquivel v. Hillcoat Properties, Inc.*, 484 F. Supp. 2d 582, 585 (W.D. Tex. 2007). District courts in other Texas districts have reached similar conclusions. *See, e.g., Sandles v. Wright*, 2013 WL 5497788, at *7 (E.D. Tex. Oct. 3, 2013); *Tran v. Thai*, 2010 WL 5232944, at *3 (S.D. Tex. Dec. 16, 2010). While Defendants try to distinguish these cases on the basis that Demaree did not have "regular" contact with out of state customers, he has pled that he did, and that is sufficient at this stage to avoid dismissal for failure to state a claim.

### 2.      Enterprise Coverage

Demaree asserts that the "enterprise coverage" provisions of the FLSA also apply to his claim. The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated). . . .

29 U.S.C. § 203(s)(1). OCM does not dispute that it has an annual gross volume of sales or business in excess of $500,000. Instead, Defendants only challenge the first prong of the enterprise coverage definition. This prong can be met by satisfying the requirements of either: (1) the "engaged in commerce" clause; or (2) the "handling" clause. *Ecoquij-Tzep v. Le Arlington, Inc.*, 2017 WL 4539430, at *3 (N.D. Tex. Dec. 21, 2017). In this case, Demaree contends that the "handling" clause

is applicable to OMC, based on his allegations that he used the telephone, computers and credit card machines in his day-to-day work.[1]

Under this clause, an enterprise satisfies the commerce test "if during the annual period which it uses in calculating its annual sales . . . it regularly and recurrently has at least two or more employees engaged in" handling goods or materials that have been moved in or produced for commerce. 29 C.F.R. § 779.238. The term "materials" is not defined in the FLSA, and the Fifth Circuit has not addressed its meaning.  However, in addressing this issue many courts look to the Eleventh Circuit's decision in *Polycarpe v. E & S Landscaping Serv., Inc.*, 616 F.3d 1217 (11th Cir. 2010). In that case, the Eleventh Circuit explained that

> to count as "materials," an item must fall within that word's ordinary meaning within the FLSA handling-clause context: as tools or other articles necessary for doing or making something. . . . Second, for an item to count as "materials" it must have a significant connection with the employer's commercial activity; the business may not just somehow internally and incidentally consume the item. This requirement is compelled because the statute covers not all "goods" and "materials," but only "goods" and "materials" that a company is engaged in "handling, selling, or otherwise working on."

*Polycarpe*, 616 F.3d at 1226 (citing  29 U.S.C. § 203(s)(1)(A)(i)). Under *Polycarpe*, an item will count as a "material" for purposes of the handling clause if it is used by the employee as a tool or other article necessary for doing something the employer does, and if employees handle, sell or otherwise work on the item for the employer's commercial (not just any) purposes. *Id.* at 1227.

In *Blundell v. Lassiter*, 2018 WL 6738046, at *10 (N.D. Tex. May 21, 2018), the court found that for the purposes of a Rule 12(b)(6) motion, pleadings stating that "office staff members who handled documentation of home healthcare referral patients, scheduled home healthcare

---

[1]Defendants correctly assert that Demaree "does not allege that either he or Defendants sold or handled any products nor can he as no products of any kind are sold by OMC." Dkt. No. 13 at ¶9.

appointments, and performed data entry tasks . . . and that these office staff members used computers, computer software, and phones . . . as 'tools or other articles necessary for doing or making something'" for the commercial purposes of the employer, along with allegations that "these materials had previously been moved in or produced for commerce" were sufficient to "plausibly bring" the home healthcare business within FLSA coverage.  Similarly, in *Rodriguez v. Cortes*, 2009 WL 10667874, at *4 (S.D. Fla. Oct. 9, 2009), the district court held that that enterprise coverage existed where the plaintiffs "regular[ly] and recurrent[ly]" used "latex gloves, pharmaceutical samples, uniforms and various medical supplies manufactured outside the State in the course of their employment."  Many other courts have reached similar conclusions.  *See, e.g., Smith v. Metro Sec., Inc.*, 2019 WL 6701311, at *8 (E.D. La. Dec. 9, 2019) (enterprise coverage existed where security employees were provided with vehicles and firearms manufactured in other states); *Platter v. G Force Cement Works, L.L.C.*, 2020 WL 1308171, at *4 (S.D. Tex. Mar. 16, 2020) (cement trucks used in concrete business were "materials" under the handling provision of the FLSA); *Mata v. Caring For You Home Health, Inc.*, 94 F. Supp. 3d 867, 873 (S.D. Tex. 2015) (enterprise coverage existed where home healthcare workers drove Toyotas and carried equipment and supplies ordered from an out of state company).

Demaree pleads that he and other OMC front desk employees used computers, telephones, and credit card machines produced in other states, to make appointments and charge customers for OMC's services. These items, necessary for running OMC's business, qualify as "materials" sufficient to bring Defendants within FLSA enterprise coverage under the handling clause.

## C.    Claims Against Sachiko Tachibana

Lastly, Tachibana argues that the Court should dismiss claims against her because "Plaintiff says nothing in his complaint to state a claim against Sachiko Tachibana individually. Ms. Tachibana

is the owner of OMC, and does nothing during the course of her business there in her individual capacity, nor has Plaintiff alleged so." Dkt. No. 13 at 13.  Demaree responds that he has in fact addressed the individual liability of Ms. Tachibana in his pleadings as follows:

> 7. Sachiko Tachibana is the Director of Oriental Medicine Clinic, LLC. She may be served at 801 5th St., Suite 1610, Austin Texas 78703 or at 222 West Ave., Apt. 1612, Austin, Texas 78701.

> 8. At all times relevant to this claim, Sachiko Tachibana acted directly or indirectly in the interest of Defendant Oriental Medicine Clinic, LLC in relation to Demaree's employment.

> 9. Sachiko Tachibana was an employer of Demaree as defined by 29 U.S.C. §203(d).

> 10. At all times hereinafter mentioned, Sachiko Tachibana exercised managerial responsibilities and substantial control over Oriental Medicine Clinic, LLC's employees, including Demaree, and the terms and conditions of his employment. Sachiko Tachibana had the authority to: hire, fire and direct Oriental Medicine Clinic, LLC's employees, including Demaree; supervise and control the employment relationships and work schedules of Oriental Medicine Clinic, LLC's employees, including Demaree; set and determine the rate and method of pay of Oriental Medicine Clinic, LLC's employees, including Demaree; and decide whether Demaree received overtime compensation.

Dkt. No. 11, ¶¶7-10.

The minimum wage provisions of the FLSA apply to "employers."  29 U.S.C. § 206(a). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit uses the "economic reality" test to evaluate whether there is an employer/employee relationship. *See, e.g., Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990). The test originates in the Supreme Court's holding that "economic reality" should govern the determination of employer status under the FLSA. *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961). To determine whether an individual or entity is an employer, the court thus considers whether the alleged employer: (1) had the power to hire and fire employees, (2) supervised and controlled the

schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Williams*, 595 F.3d at 620. In cases where there may be more than one employer, courts "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Graves*, 909 F.2d at 1556. Not every element must be present in order to find employer status. *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Id.*

Demaree alleges that Tachibana was his "employer," and that she: (1) exercised managerial responsibilities and substantial control over him; (2) controlled the terms and conditions of his employment, (3) had the authority to hire, fire and direct his work; (4) supervised and controlled his employment relationships and work schedules; (5) set and determined the rate and method of his pay; and (6) decided whether or not he received overtime compensation. Dkt. 11, ¶ 10. He has also noted that she is the director of OMC. *Id.* at ¶ 7. Again, for purposes of a Rule 12(b)(6) motion where the Court accepts as true the allegations of the complaint, this is more than enough to state a claim against Tachibana as Demaree's alleged "employer."

## III. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **DENY** Defendants' Second Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. No. 13). The Clerk is directed to remove ths case from the docket of the undersigned and return it to the docker of the Hon. Lee Yeakel.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 12ᵗʰ day of January, 2021.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE